**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IFIXITUSA LLC; and Sarkes Mrkdichian LLC,<br><br>                    Plaintiffs,<br><br>v.<br><br>iFixit Corporation,<br><br>                    Defendant. | No. CV-21-00887-PHX-DGC<br><br>**ORDER** |

This case involves a dispute over the internet domain names IFIXITUSA.com and IFIXITUSABUSINESS.com. Plaintiffs IFIXITUSA LLC and Sarkes Mrkdichian LLC brought this action to halt the transfer of those domain names to Defendant iFixit.

Defendant moves to dismiss Plaintiffs' second amended complaint. Docs. 28, 33. The motion is fully briefed (Docs. 34, 35), and neither side requests oral argument. For reasons stated below, the Court will grant the motion in part and deny it in part.

**I.    Background.**

In 2007, Defendant federally registered the "IFIXIT" trademark in connection with an online store featuring computers, related accessories, and electronic instruction and repair manuals. *See* Doc. 28 ¶¶ 6-8; U.S. Patent and Trademark Office, *Trademark Elec. Search Sys.*, https://tmsearch.uspto.gov/bin/showfield?f=doc&state=4805:nlo65e.2.7 (last

visited May 28, 2022).[1]  Plaintiffs registered the domain names with GoDaddy.com – IFIXITUSA.com in 2016 and IFIXITUSABUSINESS.com in 2020.  Doc. 28 ¶ 33; Internet Corp. for Assigned Names and Numbers, *Registration Data Lookup Tool*, https://lookup.icann.org/en/lookup (last visited May 28, 2022).

After learning of the domain names in early 2021, Defendant initiated a domain name transfer proceeding with the World Intellectual Property Organization ("WIPO"), a United Nations agency that provides domain name dispute resolution pursuant to the Uniform Dispute Resolution Policy ("UDRP").  Doc. 28 ¶¶ 3, 22; *see Baklan v. All Answers Ltd.*, No. CV-20-00707-PHX-JZB, 2020 WL 6063254, at *1 n.1 (D. Ariz. Oct. 14, 2020) (citing WIPO, https://www.wipo.int/portal/en/).  In May 2021, a WIPO panel ordered that the domain names be transferred to Defendant.  Doc. 28 ¶ 23; *see iFixit v. Mrkdichian*, No. D2021-0381, § 8 (WIPO May 2, 2021), https://www.wipo.int/amc/en/domains/search/text.jsp?case=D2021-0381.[2]

Plaintiffs brought this action on May 18, 2021, asserting claims under the Anticybersquatting Consumer Protection Act ("ACPA"), Pub. L. No. 106-113, §§ 3001-10, 113 Stat. 1501 (1999).  The ACPA amended the Lanham Act, 15 U.S.C. § 1051 et seq., which "protects the use of trademarks in interstate and foreign commerce."  *Shenzhen Big Mouth Techs. Co. v. Factory Direct Wholesale, LLC*, No. 21-CV-09545-RS, 2022 WL 1016666, at *3 (N.D. Cal. Apr. 5, 2022).  The ACPA is codified in scattered sections of Title 15 of the United States Code, including 15 U.S.C. §§ 1114(2)(D) and 1125(d).  *See*

---

[1] In August 2020, a company owned by Sarkes Mrkdichian initiated a proceeding to cancel the IFIXIT mark.  *See* Doc. 28 ¶¶ 11-12, 50; U.S. Patent and Trademark Office, *Trademark Trial and Appeal Bd. Inquiry Sys.*, https://ttabvue.uspto.gov/ttabvue/v?pno=92075129 (last visited May 28, 2022).  That proceeding is still pending.  *See id.*; Doc. 33 at 2.

[2] The WIPO panel concluded that the domain names were confusingly similar to the IFIXIT mark, Plaintiffs had no right or legitimate interest in them, and Plaintiffs had registered them in bad faith.  *See id.* § 7(A)-(C).  The WIPO decision "is not accorded deference on the merits in [this] federal court."  *Dent v. Lotto Sport Italia SpA*, No. CV-17-00651-PHX-DMF, 2021 WL 242100, at *1 (D. Ariz. Jan. 25, 2021) (citations omitted); *see Ricks v. BMEzine.com, LLC*, 727 F. Supp. 2d 936, 948 n.8 (D. Nev. 2010) (same); *AIRFX.com v. AirFX LLC*, No. CV 11-01064-PHX-FJM, 2011 WL 5007919, at *4 (D. Ariz. Oct. 20, 2011) ("findings of the UDRP panel . . . are not binding on this court").

*Mira Holdings, Inc. v. Regents of Univ. of Cal.*, No. 6:18-cv-190-Orl-37GJK, 2018 WL 8244597, at *3 n.1 (M.D. Fla. Dec. 10, 2018).

A primary purpose of the ACPA is "to provide clarity in the law for trademark owners by prohibiting the bad-faith and abusive registration of distinctive marks as Internet domain names with the intent to profit from the goodwill associated with such marks – a practice commonly referred to as 'cybersquatting.'" S. Rep. No. 106-140, at 4 (1999). To balance the rights given to trademark owners against cybersquatters, the ACPA also provides some protection to domain name registrants against "overreaching trademark owners." *Id.* at 11; *see* 15 U.S.C. §§ 1114(2)(D)(iv)-(v). Under § 1114(2)(D)(iv), a domain name registrant may sue a trademark owner for making certain material misrepresentations in the domain name dispute proceeding. *See Shenzhen*, 2022 WL 1016666, at *3. And under § 1114(2)(D)(v), a domain name registrant who is aggrieved by an overreaching trademark owner may bring an action to declare that the domain name registration and use is not unlawful under the ACPA's "cyberpiracy prevention" clause, § 1125(d). *See Mira Holdings*, 2018 WL 8244597, at *3. Section 1114(2)(D) provides that the court may "grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant." § 1114(2)(D)(iv)-(v); *see Dent v. Lotto Sport Italia SpA*, No. CV-17-00651-PHX-DMF, 2020 WL 1170840, at *4 (D. Ariz. Mar. 11, 2020).

Count one of the second amended complaint seeks a declaration that Plaintiffs' registration and use of the IFIXITUSA.com and IFIXITUSABUSINESS.com domain names are not unlawful under § 1125(d)(1). Doc. 28 ¶¶ 48-70; *see* § 1114(2)(D)(v). Count two seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. Doc. 28 ¶¶ 71-77. Count three claims that Defendant has engaged in "reverse domain name hijacking" under § 1114(2)(D)(iv) by misleading the WIPO into issuing the transfer order. *Id.* ¶¶ 78-96. Count four seeks an injunction against the pending transfer under § 1114(2)(D). *Id.* ¶¶ 97-99. Defendant moves to dismiss each claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 33.

## II.     Rule 12(b)(6) Standard.

Under Rule 12(b)(6), the factual allegations of the complaint are taken as true and construed in the light most favorable to the plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully[,]" it "is not akin to a 'probability requirement[.]'" *Id.* (citing *Twombly*, 550 U.S. at 556).

## III.    Count One – Declaratory Relief Under the ACPA.

Section 1114(2)(D)(v) of the ACPA provides that "[a] domain name registrant whose domain name has been suspended, disabled, or transferred . . . may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter." The parties do not dispute that Plaintiffs registered the domain names IFIXITUSA.com and IFIXITUSABUSINESS.com with GoDaddy.com, that those domain names essentially have been transferred to Defendant per the WIPO order, or that Plaintiffs provided notice to Defendant before bringing this action. Thus, the relevant question for count one is whether the complaint sufficiently alleges that Plaintiff's registration and use of the domain names is not unlawful under the ACPA's cyberpiracy prevention clause, § 1125(d)(1). *See* Doc. 28 ¶ 49; *AIRFX.com v. AirFX LLC*, No. CV 11-01064-PHX-FJM, 2012 WL 3638721, at *6 (D. Ariz. Aug. 24, 2012) (discussing the elements of a claim under § 1114(2)(D)(v))); *Strong Coll. Students Moving Inc. v. Coll. Hunks Hauling Junk Franchising LLC*, No. CV-12-01156-PHX-DJH, 2015 WL 12602438, at *8 (D. Ariz. May 15, 2015) (same and noting that "§ 1114(2)(D)(v) requires a court to determine whether a party is in compliance with

§ 1125(d)") (citation omitted); *see also Baklan*, 2020 WL 6063254, at *2-3 (explaining that the plaintiff's ACPA claim was not premature where there was "no dispute that Godaddy.com has been ordered to transfer the disputed domain name and paused the transfer process pending resolution of this action") (citations omitted).

To show that their conduct is not unlawful under § 1125(d)(1), Plaintiffs must "prove either (1) they did not register, traffic, or use a domain name that is identical or confusingly similar to a distinctive mark, or (2) they did not have a bad faith intent to profit from that mark." *Strong Coll. Students Moving*, 2015 WL 12602438, at *8 (citing § 1125(d)(1)(A)(i)-(ii)); *see also Mira Holdings*, 2018 WL 8244597, at *3 ("If the registrant 'has a bad faith intent to profit' from an owner's mark and registers a domain name that 'is identical or confusingly similar' to a mark distinctive at the time the registrant registered the domain name, such is considered unlawful under the ACPA.") (citing § 1125(d)(1)(A)(i)-(ii)); *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1030 (9th Cir. 2011) ("To prevail on its ACPA claim, GoPets Ltd. must show (1) registration of a domain name, (2) that was 'identical or confusingly similar to' a mark that was distinctive at the time of registration, and (3) 'bad faith intent' at the time of registration.") (quoting § 1125(d)(1)); *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1197, 1202 (9th Cir. 2009) (noting that distinctiveness and bad faith are required to sustain an ACPA claim).

Defendant contends that count one fails to plead facts showing that the IFIXIT mark is not distinctive and that Plaintiffs have not acted in bad faith. Docs. 33 at 4-7, 35 at 1-6. According to Defendant, the allegations supporting count one are either irrelevant or merely recite the statutory elements without specific facts necessary to state a plausible claim under modern pleading standards. *Id.* at 4-7. The Court does not agree.

**A.     Distinctiveness.**

As noted, Plaintiffs can establish that they have not violated § 1125(d)(1) by showing that the IFIXIT mark is not distinctive. *See Strong Coll. Students Moving*, 2015 WL 12602438, at *8. The complaint alleges that "I fix it, U fix it, we fix it, fix it, I fix, or almost any combination of these words are not distinctive terms [and] instead are

[descriptive terms] commonly used to describe a business's goods or services." Doc. 28 ¶¶ 38-39. The complaint further alleges that Defendant's IFIXIT mark "is descriptive, [and] is definitely not distinctive." *Id.* ¶ 16. Taking these allegations as true, as required on a motion to dismiss, *see Twombly*, 550 U.S. at 556, the Court cannot conclude that the IFIXIT mark is distinctive and not merely descriptive. That issue must be resolved by the trier of fact. *See Lavco Sols. Inc. v. Biztracker Sys. of St. John, LLC*, No. 2:20-cv-03286-VAP-PLAx, 2020 WL 11648275, at *4 (C.D. Cal. Aug. 25, 2020) (denying a motion to dismiss after accepting as true the plaintiff's allegation that a mark was "fanciful"); *see also Lahoti*, 586 F.3d at 1197-98 (because "[d]eciding whether a mark is distinctive or merely descriptive is far from an exact science and is a tricky business at best[,]" the "trier of fact is . . . left with a hard task of judgment") (citation and quotation marks omitted).

Defendant asserts that the validly registered IFIXIT mark is "presumed to be distinctive[.]" Doc. 33 at 5 (quoting *E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F. Supp. 457, 462 (N.D. Cal. 1991)). But where the complaint plausibly alleges that the defendant's mark is merely descriptive, a "motion to dismiss is not the proper vehicle to engage in a fact-specific analysis" regarding the presumption of distinctiveness. *Naples Screen Repair, LLC v. Arrow Handyman "LLC"*, No. 2:20-cv-844FTM-SPC-NPM, 2021 WL 75124, at *2 (M.D. Fla. Jan. 9, 2021) (noting that the court "has been tasked with testing the sufficiency of the pleading, not the sufficiency of facts the parties have not yet been able to develop through discovery"); *Zeltiq Aesthetics, Inc. v. Pobra Enters., LLC*, 2017 WL 238138, at *3 (M.D. Fla. Jan. 19, 2017) (declining to engage in a fact-intensive analysis on a motion to dismiss in a trademark infringement case where the claims were plausible); *see also Lahoti*, 586 F.3d at 1199-1201 (explaining that while registration is evidence of a mark's distinctiveness, it is not conclusive because "[c]ontext is critical to a distinctiveness analysis").

**B.    Bad Faith.**

Section 1125(d)(1) "enumerates nine nonexclusive factors for courts to consider in determining whether bad faith exists." *Lahoti*, 586 F.3d at 1202. Courts need not "march

6

through the nine factors seriatim" because their use is merely permissive and "the most important grounds for finding bad faith are the unique circumstances of the case[.]" *Id.*; *see Strong Coll. Students Moving*, 2015 WL 12602438, at *9 (explaining that the "unique circumstances 'affect the examination (and weight) of the nine permissive statutory factors'") (quoting *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1220 (9th Cir. 2012)).

Plaintiffs address several factors in the complaint, alleging that: (1) Plaintiffs have priority and superior rights to the IFIXITUSA and IFIXITUSABUSINESS marks for online stores featuring computers (Doc. 28 ¶ 60); (2) the domain names IFIXITUSA.com and IFIXITUSABUSINESS.com do not include a personal name (*id.* ¶ 57); (3) Plaintiffs have used the domain names for the bona fide offering of goods and services (*id.* ¶¶ 36, 45, 61-62); (4) Plaintiffs have made no attempt to disparage Defendant or divert its consumers, and Plaintiffs' use of the domain names is not likely to cause consumer confusion (*id.* ¶¶ 43, 63, 67); (5) Plaintiffs have never offered to sell the domain names (*id.* ¶ 44); (6) Plaintiffs did not attempt to mislead or provide false contact information when they registered the domain names (*id.* ¶ 68); and (7) the IFIXIT mark is not distinctive (*id.* ¶¶ 16, 39). *See* § 1125(d)(1)(B)(i)(I)-(III), (V)-(VII), (IX). The complaint further alleges that Plaintiffs have never tried to profit from the IFIXIT mark. Doc. 28 ¶ 53. Accepting these allegations as true and construing them in the light most favorable to Plaintiffs, *see Cousins*, 568 F.3d at 1067, the Court finds that the complaint sufficiently alleges a lack of bad faith intent to profit from the IFIXIT mark.

Defendant notes that the complaint lacks certain factual details that Plaintiffs could have alleged, such as the goods and services Plaintiffs offered when using the domain names and the contact information Plaintiffs provided to GoDaddy when they registered the domain names. Doc. 33 at 6. But while Rule 8's pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," it "does not require 'detailed factual allegations[.]'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S.

at 555); *see Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) ("To avoid a Rule 12(b)(6) motion, a complaint need not contain detailed factual allegations[.]").

Defendant further asserts that the complaint provides no details that go beyond a formulaic recitation of the statutory criteria, noting that Plaintiffs merely allege that they "have never tried to profit from the [IFIXIT mark]" (Doc. 28 ¶ 53), "have made no attempt to divert consumers" from Defendant (*id.* ¶ 63), and "have made no attempt to disparage" Defendant (*id.* ¶ 67). Doc. 33 at 6. To be sure, the complaint could have provided greater detail. "But it is hard to plead a negative with great specificity; that there was no [intent to profit from the IFIXIT mark] is about as precise as one could be." *Santarlas v. Atchley*, No. 8:15-CV-374-T-23TBM, 2015 WL 2452301, at *2 (M.D. Fla. May 21, 2015) (noting that "*Twombly* and *Iqbal* do not require useless details") (citation omitted); *see Genmark Diagnostics, Inc. v. Vironovative BV*, No. 14CV1140 BEN (JLB), 2015 WL 12513463, at *3 (S.D. Cal. Feb. 25, 2015) ("What ViroNovative demands for notice is that Genmark not only plead a negative – how Genmark does not infringe – but every negative – every conceivable way Genmark does not infringe . . . . ViroNovative demands too much when . . . the plausibility standard does not require 'detailed factual allegations.'") (quoting *Twombly*, 550 U.S. at 555); *Paone v. Broadcom Corp.*, No. 15 CIV. 0596 BMC GRB, 2015 WL 4988279, at *13 (E.D.N.Y. Aug. 19, 2015) ("It is, of course, difficult to plead a negative with any detail. Thus, while plaintiff's allegation 'arguably resembles a legal conclusion numerous post-Iqbal cases have not required detailed factual allegations[.]") (citation and alterations omitted); *Puget Bioventures, LLC v. Biomet Orthopedics LLC*, No. 3:17-CV-502 JD, 2018 WL 2933733, at *10 (N.D. Ind. June 11, 2018) (same and noting the "obvious difficulty for plaintiffs to plead a negative"); *see also Phoenix Payment Sols., Inc. v. Towner*, No. CV-08-651-PHX-DGC, 2009 WL 3241788, at *4 (D. Ariz. Oct. 2, 2009) (a person's intent is an issue for the trier of fact) (citation omitted).

Defendant's reliance on *Stephens v. Trump Organization LLC*, 205 F. Supp. 3d 305 (E.D.N.Y. 2016), is misplaced. Doc. 33 at 6. The plaintiff in that case sought blanket declarations that he had not violated federal trademark law or engaged in cybersquatting

"without identifying any specific statutes, policy provisions, or rules that are in actual contention[.]" *Stephens*, 205 F. Supp. 3d at 312. Plaintiffs' complaint does not require Defendant "to guess the provision of law . . . that might be in dispute." *Id.*

### C. Conclusion.

The Court concludes that the allegations of Plaintiff's complaint "possess enough heft" to "nudge[] their [ACPA claim] across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 557, 570. The Court will deny the motion to dismiss with respect to count one.

## IV. Count Two – Declaratory Judgment Under 28 U.S.C. § 2201.

Count two seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. Doc. 28 ¶¶ 71-77. The Act provides that "[i]n a case of actual controversy within its jurisdiction," a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

Defendant contends that count two should be dismissed to the extent it seeks the same declaratory relief requested in the ACPA claims because count two would serve "no useful purpose." Doc. 33 at 7-8 (quoting *Adelman v. Rheem Mfg. Co.*, No. 15-cv-00190, 2015 WL 4874412, at *8 (D. Ariz. Aug. 14, 2015)). According to Defendant, Plaintiffs "ask for the same declaration granting them the same rights to the same disputed domains" under both the APCA and § 2201. *Id.* at 8. Plaintiffs do not address this argument in their response. *See* Doc. 34 at 9-10.

"The existence of another adequate remedy does not preclude a declaratory judgment [under § 2201] that is otherwise appropriate." *Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 943 (9th Cir. 2009) (quoting Fed. R. Civ. P. 57)); *see Shin v. ICON Found.*, No. 20-CV-07363-WHO, 2021 WL 6117508, at *6 (N.D. Cal. Dec. 27, 2021) (same). But a court has discretion to dismiss a declaratory judgment claim where "the availability of other adequate remedies may make declaratory relief inappropriate," or where the declaratory relief sought would be

"'needlessly duplicative' of the damages or relief requested under the substantive claims." *Shin*, 2021 WL 6117508, at *6 (citation omitted).

Defendant cites *Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 25 n.12 (1st Cir. 2001), which found § 2201 to be "largely irrelevant" to a case involving ACPA claims "because the ACPA itself authorizes declaratory relief." Doc. 33 at 8. But it is not clear that the same is true in this case. In count one, Plaintiffs seek a declaration under § 1114(2)(D)(v) that their registration and use of the domain names are not unlawful under § 1125(d)(1). Doc. 28 ¶ 49. Plaintiffs seek similar relief under § 2201 – a declaratory judgment that Plaintiffs are the rightful owners of the domain names and have the right to use them. *Id.* ¶¶ 74, 76. But Plaintiffs also seek a declaratory judgment that the domain names do not infringe Defendant's IFIXIT mark and that the statute of limitations prohibits Defendant from enforcing the mark against Plaintiffs. *Id.* ¶ 75. Plaintiffs allege that they have "a real and reasonable apprehension that [they] will be subject to litigation" because Defendant "has attempted multiple times to shutdown Plaintiffs['] disputed domains thereby creating an actual controversy." *Id.* ¶ 77.

The Court cannot conclude from the face of the complaint that the declaratory relief sought in count two is inappropriate or will serve no useful purpose. *See Shin*, 2021 WL 6117508, at *6 (noting that a declaratory judgment under § 2201 may be appropriate "when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding") (quoting *McGraw-Edison Co. v. Preformed Line Prods. Co.*, 362 F.2d 339, 342 (9th Cir. 1966)); *Ricks v. BMEzine.com*, LLC, 727 F. Supp. 2d 936, 959-60 (D. Nev. 2010) (explaining that unlawfulness under § 1114(2)(D)(v) refers only to § 1125(d)(1) of the ACPA and not the entire Lanham Act). The Court will deny the motion to dismiss with respect to count two.[3]

///

---

[3] Because the ACPA claim asserted in count one survives dismissal and creates an actual controversy within the Court's jurisdiction, *see* § 2201(a), the Court need not address whether a request for relief under the Declaratory Judgment Act can be brought as a standalone claim. *See* Docs. 33 at 8, 34 at 9.

10

**V.    Count Three – Reverse Domain Name Hijacking Under § 1114(2)(D)(iv).**

Count three claims that Defendant has engaged in reverse domain name hijacking under § 1114(2)(D)(iv) by misleading the WIPO into issuing the transfer order. Doc. 28 ¶¶ 78-96. Section 1114(2)(D)(iv) requires a showing that "the defendant (1) made a 'knowing and material misrepresentation . . . that a domain name is identical to, confusingly similar to, or dilutive of a mark' and (2) this misrepresentation caused a registration authority to transfer, disable, or cancel the domain name." *Shenzhen Big Mouth Techs.*, 2022 WL 1016666, at *3; *see Dent*, 2018 WL 11318189, at *2 (same). Defendant argues that the complaint contains no allegations of a knowing and material misrepresentation to the WIPO that caused it to transfer the domain names to Defendant. Docs. 33 at 9-12, 35 at 7-9.

The complaint alleges that Defendant made certain misrepresentations to the WIPO and omitted other material facts. Specifically, the complaint alleges that Defendant misrepresented that (1) it had received reports of actual consumer confusion between the IFIXIT mark and Plaintiffs' website (Doc. 28 ¶ 58), and (2) it has regularly sold computers since 2006, presenting a fabricated receipt in support (*id.* ¶¶ 64, 86). The complaint further alleges that Defendant failed to disclose that the IFIXIT mark was in the process of being cancelled (*id.* ¶¶ 31, 52, 83) and that the parties have been doing business together since 2017 (*id.* ¶ 85).

Even if the alleged misrepresentations were knowing and material, § 1114(2)(D)(iv) "includes a causation requirement. The transfer must be 'based on' the knowing and material misrepresentation." *ISystems v. Spark Networks Ltd.*, No. 3:08-CV-1175-N, 2014 WL 12714837, at *4 (N.D. Tex. Sept. 19, 2014). Nowhere in the complaint do Plaintiffs allege that the WIPO decision to transfer the domain names to Defendant was based on the alleged misrepresentations or caused by any omission. *See* Doc. 33 at 11-12.[4] While

---

[4] While the WIPO decision is not accorded deference, it is worth noting, as a factual matter, that the WIPO panel was aware of the proceedings to cancel the IFIXIT mark, and noted that while Defendant had claimed to receive reports of consumer confusion, it "provided no evidence of such alleged confusion." *See iFixit*, No. D2021-0381, § 8.

11

Plaintiffs provide "many reasons why the WIPO panel may have made a poor decision, [their] burden in pleading a reverse domain name hijacking claim is to establish that WIPO's poor decision was made based on Defendant's knowing and material misrepresentation." *Baklan*, 2020 WL 6063254, at *4 (citing 15 U.S.C. § 1114(2)(D)(iv)). Because Plaintiffs have not alleged facts sufficient to show that the "WIPO made its decision based on a knowing and material misrepresentation by Defendant, Plaintiff[s] [have] not stated a claim on which relief can be granted" under § 1114(2)(D)(iv). *Id.* The Court will grant the motion to dismiss with respect to count three.[5]

## VI.    Count Four – Injunction Under § 1114(2)(D).

Count four seeks an injunction prohibiting the transfer of the domain names pursuant to § 1114(2)(D). Doc. 28 ¶¶ 97-99. That provision of the ACPA states that "[t]he court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant." § 1114(2)(D)(iv)-(v).[6]

Noting that count four merely cites § 1114(2)(D)'s allowance for injunctive relief, Defendant suggests that the Court should not "consider[] all of the other allegations in the complaint[.]" Doc. 33 at 15. But count four permissibly incorporates those allegations. Doc. 28 ¶ 97. The Court cannot simply ignore them.

Defendant asserts that count four should be dismissed because count one does not plausibly allege that Plaintiffs' use of the domain names is lawful. Doc. 33 at 15. Because count one survives dismissal, the Court will deny the motion to dismiss count four.[7]

/ / /

/ / /

---

[5] Given this ruling, the Court need not address Defendant's argument that Plaintiffs were required to plead fraud in the WIPO proceedings with specificity. *See* Doc. 33 at 13-14 (citing Fed. R. Civ. P. 9(b)).

[6] The heading of count four cites § 1114(2)(D)(v) (Doc. 28 at 15), but injunctive relief is also available under § 1114(2)(D)(iv).

[7] Defendant's request for an award of attorneys' fees (*id.* at 16-17) is denied.

**VII. Leave to Amend.**

Plaintiffs note that the Court should grant leave to amend when justice so requires. Doc. 34 at 16 (citing Fed. R. Civ. P. 15(a)). But Plaintiffs do not address the relevant factors for leave to amend, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), nor do they otherwise explain why justice requires that they be given a fourth opportunity to plead their claims. Plaintiffs also failed to comply with Local Rule 15.1, which requires a proposed amended pleading "indicat[ing] in what respect it differs from the pleading which it amends[.]" LRCiv 15.1(a); *see Eldridge v. Schroeder*, No. CV-14-01325-PHX-DGC (ESW), 2016 WL 354868, at *2 (D. Ariz. Jan. 28, 2016) (explaining that the "local rules are not petty requirements, but have 'the force of law[,]'" and that courts in this district "routinely den[y] motions for leave to amend for failure to comply with LRCiv 15.1(a)") (citations omitted). Plaintiffs' request for leave to amend is denied.

**IT IS ORDERED:**

1. Defendant's motion to dismiss (Doc. 33) is **granted** on count three of the second amended complaint and **denied** with respect to counts one, two, and four.

2. The Court will set a Rule 16 case management conference by separate order.

Dated this 13th day of June, 2022.

David G. Campbell
Senior United States District Judge

13